THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. HARRY WEISS and MARTIN SCHLOSSMAN, Appellants.

Argued December 8, 1937; decided January 11, 1938.

*Irwin N. Wilpon* and *Burton B. Turkus* for appellants. The trial court committed error in excluding over the objection and exception of the defendants evidence by the defendants tending to show the intent which animated them in their participation in the acts charged in the indictment. (*Wallace* v. *United States,* 162 U. S. 466; *People* v. *Flack,* 125 N. Y. 324; *Hadden* v. *People,* 25 N. Y. 373; *People* v. *Baker,* 96 N. Y. 340; *Kerrains* v. *People,* 60 N. Y. 221; *People ex rel. Hegeman* v. *Corrigan,* 195 N. Y. 1.) The trial court's refusal to charge as requested on intent constitutes reversible error. (*People* v. *Flack,* 125 N. Y. 324; *McKenna* v. *People,* 81 N. Y. 360; *People* v. *Powell,* 63 N. Y. 88; *Miller* v. *People,* 5 Barb. 203; *Bentall* v. *United States,* 262 Fed. Rep. 744; *People* v. *Camp,* 66 Hun, 531; 139 N. Y. 87; *Dehn* v. *Mandeville,* 68 Hun, 335; *Hadden* v. *People,* 25 N. Y. 373; *Johnson* v. *Blaney,* 198 N. Y. 312; *Kupfer* v. *Brooklyn Daily Eagle,* 250 App. Div. 19.) The trial court committed error in refusing to charge as requested by the defendants that the defendants might be found guilty of the crime of assault under the indictment and in refusing to submit

the crime of assault to the jury. (*People* v. *Hope*, 257 N. Y. 147; *People ex rel. Prince* v. *Brophy*, 273 N. Y. 90.)

*William F. X. Geoghan, District Attorney (Henry J. Walsh* of counsel), for respondent. The trial court committed no error in excluding the testimony proferred by the appellants as to their state of mind in committing the acts charged against them. (*People* v. *Hadden*, 25 N. Y. 373; *People* v. *Flack*, 125 N. Y. 324; *Kerrains* v. *People*, 60 N. Y. 221; *People* v. *Baker*, 96 N. Y. 340; *People ex rel. Hegeman* v. *Corrigan*, 195 N. Y. 1; *People* v. *Schmidt*, 216 N. Y. 324.) The charge of the trial court was a correct statement of the law. (*People ex rel. Hegeman* v. *Corrigan*, 195 N. Y. 1; *People* v. *Schmidt*, 216 N. Y. 324; *People* v. *Odell*, 230 N. Y. 481.)

O'BRIEN, J. These appellants, without authority of law, seized and confined Paul H. Wendel, who was suspected or whom some pretended to suspect of the commission of a murder in New Jersey which had attracted attention throughout the country. They have been convicted of the crime of kidnapping as defined by section 1250 of the Penal Law, which provides; " A person who *wilfully:* 1. Seizes, confines, inveigles, or kidnaps another, *with intent* to cause him, *without authority of law*, to be confined or imprisoned within this state, or to be sent out of the state, or to be sold as a slave, or in any way held to service or kept or detained, against his will * * * is guilty of kidnapping * * *."

The elements necessary to constitute the crime of kidnapping are different from those which are embraced within the torts of illegal arrest and false imprisonment. Where the detention is illegal, a civil action for damages will lie without regard to the innocence of the defendant in his *intentions.* (*Snead* v. *Bonnoil*, 166 N. Y. 325, 328.) In order to make out the crime of kidnapping, proof beyond a reasonable doubt must be produced that the

defendant *willfully intended, without authority of law*, to confine or imprison another. To illustrate the difference: A reputable citizen is approached by a man, clothed in a police uniform and wearing a police shield, who requests him to assist in the arrest of one whom he describes as a murderer. The law-abiding citizen, in good faith and in the belief that he is performing his duty, assists the uniformed stranger and participates in the arrest of one who is entirely innocent. While the citizen may be answerable in damages in a civil action, he is not guilty of the crime of kidnapping, even though proof is later adduced that the uniformed stranger is an impostor and a kidnapper. In such a case, far from intending to seize or confine the prisoner *without authority of law*, he believed that his act was with such authority. In prosecutions for kidnapping, therefore, willful intent to seize a person without authority of law is the essential issue. Inferences of fact as to intent depend upon the degree of credibility accorded to witnesses by the jury and may be drawn from the defendant's disbelief or belief in the legality of his act. For the purpose of enabling the jury to draw its inference of fact, a defendant is entitled to the right of informing the jury in respect to his belief. His testimony may be of such a character as to fail to convince a jury, yet, nevertheless, he is entitled as a legal right to produce it for what it may be worth and to have it considered by the jury.

Appellant Schlossman testified that, prior to the seizure of Wendel, he had a conversation with appellant Weiss and with Ellis Parker, Jr., at a hotel in New York. His counsel attempted to introduce testimony in relation to statements by Parker, for the purpose of showing Schlossman's belief in his authority to act, but the offer was excluded and an exception taken. The following statement by Schlossman to Parker was, however, admitted: " I have got to have something to show that I am doing something within the law, helping you out this way,

so he took out a badge, Secret Service of the State of New Jersey, and gave it to me and said he is hereby appointing me a special deputy to help him in the Lindbergh case." The questions, " Did you desire to help a detective solve any part of the Lindbergh mystery at that time? " and " Did you think at that time that you were taking part in some noble work? " were excluded and exceptions taken. The court stated: " That does not affect the question of his innocence or guilt, what he thought about those matters." Exception was taken to the exclusion of testimony by which appellant Weiss attempted to show that Parker had informed him of his official position and also to the exclusion of testimony by Weiss that he believed that the arrest of Wendel was made with authority of law. The following testimony in relation to a conversation between Weiss and Parker was stricken out and an exception noted: " I said, ' Now, listen. Suppose I arrest this man and we use these badges and he raises an outcry, and it proves to be an arrest illegally and there is police all over the street and the neighborhood and they should happen to come over. What happens then? ' He [Parker] said: ' Well, that is what I am here for.' He says, ' You have the proper authority and if they question you I am there to prove who I am and whatever you done is the proper thing. Q. Did you believe that — what he told you? A. Yes." Exception was taken also to the ruling which sustained objection to this question directed to Weiss: " Did you believe that you were doing your Police work? "

Counsel for defendants requested: " That if the defendants, or either of them, acted in the honest belief that his act in seizing and confining Wendel was done with authority of law, even if they were mistaken in such belief, that they cannot be convicted of seizing, confining or kidnapping Wendel, *with intent, to cause him without authority of law* to be confined or imprisoned within the

State, and the jury must acquit such defendants or defendant." To this request the court replied: " I not only decline to charge that but I repeat that the question of good faith is no defense." The jury was also instructed that " Even if they [defendants] did believe it, it is no defense in this case." If such interpretation is to prevail, then it must follow that in every instance where a defendant admits the fact that he *intended to make the arrest* and the courts later declare the arrest to have been made without authority of law, he must necessarily be convicted as a kidnapper, irrespective of his belief or his intentions to conform with the law. A peace officer, in the mistaken belief that he is acting with authority of law, makes an illegal arrest and later, in an effort to extort a confession, puts his prisoner through the third degree. He is guilty of the crime of assault or of official oppression, but he is certainly not a kidnapper. The question of assault is not in this case. So the trial judge charged.

The intent of defendants to seize and confine Wendel cannot be doubted, but their intent to perform these acts without authority of law depends upon the state of mind of the actors. If in good faith they believed that they were acting within the law, there could have been no intent to act " without authority of law." Their belief or disbelief indicates intent or lack of it *(Wallace* v. *United States,* 162 U. S. 466, 477) and they were entitled to testify in respect to their intent based upon their belief. (*People* v. *Flack,* 125 N. Y. 324, 335; *Dehn* v. *Mandeville,* 68 Hun, 335, 337.)

No matter how doubtful the credibility of these defendants may be or how suspicious the circumstances may appear, we cannot say as matter of law, that, even in so strong a case as this for the prosecution, the jury was not entitled to consider the question whether defendants in good faith believed that they were acting with authority of law. We are, therefore, constrained to reverse the

judgment of conviction and order a new trial for the purpose of submitting that question of fact to the jury.

The judgments should be reversed and a new trial ordered.

CRANE, Ch. J. (dissenting). I must dissent from the conclusions of Judge O'BRIEN in this case, upon three grounds:

*First.* I believe that the charge and rulings of the court were correct, and that the law has been well stated by Judge JOHNSTON in the prevailing opinion. (252 App. Div. 463, 465.) The fact that the defendants may have thought they had authority to confine Wendel is no excuse for the criminal act and no defense. The crime of kidnapping is committed when a person seizes and confines another with intent to cause him to be confined or imprisoned within the State, and the act is done without lawful authority. The fact that the person thought he had lawful authority has nothing to do with the matter. The intent applies to the seizing and to the confining. The defendants in this case intended to seize Wendel and to confine him within the State. In fact they confined him, bound, in Schlossman's home. Whether they thought they were acting according to law or not, or had legal authority, is no defense. They had no legal authority, and the judge so charged as matter of law. In this he was correct, for such is the law. In fact no one claims they had any legal authority. Where, therefore, one is seized, taken away and secretly confined, and it turns out that the person doing it had no legal authority to do it, the crime of kidnapping is committed. Of course if there be legal authority there is no crime, but the fact that the person mistakenly thought that they had authority does not lessen the crime. The charge of the court, in my judgment, was correct, in accordance with the authorities of this State. In *People* v. *Camp* (139 N. Y. 87, 91), Judge EARL, writing in reference to the crime of kidnapping, as defined in the Revised Statutes

(2 R. S. § 28), says: " Every person who shall without lawful authority forcibly seize and confine any other, * * * with intent * * * to cause such other person to be secretly confined or imprisoned in this state against his will," is guilty of kidnapping. This is the Revised Statutes, and you see at once that the intent has reference to the confining and to the seizing, and does not apply to the intent to do it contrary to law. Persons are supposed to know the law; and believing that the law gives them right to do things does not rob acts of criminal consequences. Judge EARL says that these words have now been carried over into the Penal Code, and so we find them in our Penal Law, section 1250.

So in *Mandeville* v. *Guernsey* (51 Barb. 99, 101, 102; affd., 50 N. Y. 669), " an arrest of a person within this State, by a private individual, without warrant, made for the purpose of forcibly abducting the arrested person from the State, and followed immediately by such abduction, *cannot be justified*. Such seizure and abduction, of themselves, constitute a criminal offense of high grade, *both at common law, and by statute*." We have not weakened this law of kidnapping by any change in the statute. It would be a sorry day for us, in my judgment, when people can seize a man in the public streets, lock him up and torture him, and plead as defense that they believed the law permitted them to do it. The law permits no such defense, or the plea of such a defense.

*Second.* The exceptions to the rulings of the judge excluding the evidence as to whether these defendants believed that they had authority to seize and imprison Wendel are harmless anyway, as both defendants testified as to the authority which young Parker told them they had, and the reasons given for not calling upon the New York police.

*Third.* Even if the law were different than I have stated it, we should not reverse for any of these rulings upon the plea that these men *believed* the law permitted

them to seize Wendel, when both admit in their testimony before the grand jury that Wendel was taken to Schlossman's home, where Schlossman had prepared a stool or box posted in the cement upon which he and Weiss aided in fastening Wendel; that they saw him tied up with rope, and both participated in holding the straps while he was give the spread eagle, and kicked in the testicles; and both aided while he was pulled over backward by straps and tortured until he fainted. Such a case should not be reversed because these two men were not permitted to say that they believed they were aiding justice and obeying the law in committing such acts, all of which were part of the kidnapping.

For these reasons I am for affirmance of the conviction.

LEHMAN, LOUGHRAN and RIPPEY, JJ., concur with O'BRIEN, J.; CRANE, Ch. J., dissents in opinion, in which HUBBS and FINCH, JJ., concur.

Judgments reversed, etc.